Mattie COLES, et al.

v.

CITY OF PHILADELPHIA, et al.

No. CIV. A. 00–CV–6521.

United States District Court,
E.D. Pennsylvania.

June 18, 2001.

Daniel A. Rendine, Gerald J. McGoneghy, Rendine & McGoneghy, Philadelphia, PA, for Plaintiffs.

Marc S. Raspanti, Kenneth A. Murphy, Michael A. Morse, Miller, Alfano & Raspanti, P.C., Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil rights action has been brought before the Court on motion of the defendants to dismiss the plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1) on abstention grounds. For the reasons articulated below, the motion shall be granted.

### Factual Background

Plaintiffs are the owners of some 23 residences in the area of Pine Street and Osage Avenue in West Philadelphia which were destroyed by fire following the City's fire-bombing of the house occupied by members of the radical group, MOVE at 6221 Osage Avenue on May 13, 1985. After the fire, the City agreed to re-build the homes which had been destroyed and to assume responsibility for the maintenance, repair and warranty of those homes for the next ten years in exchange for the plaintiffs' agreement to forego and/or

abandon all of their claims for damages as a result of the fire.

Immediately after occupying their re-built residences, however, Plaintiffs discovered that much of the construction work had been poorly and/or improperly performed. Between 1986 and 1997, the defendant City and Defendant Redevelopment Authority ("RDA") endeavored to repair the numerous defects and problems but, by the expiration of the original ten-year warranty period, many of these defects still remained. In 1997, the plaintiffs, the City and the RDA thereafter further agreed to retain the Army Corps of Engineers to conduct a comprehensive inspection and inventory of all of the repairs and replacements needed to fulfill the defendants' warranty obligations and to bring each of the plaintiffs' homes up to acceptable building standards. In response to the Army Corps of Engineers' report, the City entered into a contract with Allied Construction Company to make all of the necessary repairs outlined in the Army Corps of Engineers' report and to make the residences free of defects and building code and License and Inspection code violations.

However, sometime between December, 1999 and April, 2000 while Allied Construction was in the process of its repair work, it informed the City and the RDA that the cost of the needed repairs was likely to exceed the cost estimates originally provided for in its contract. Between April and July, 2000, another complete inventory of necessary repairs was undertaken by the City, the defendant Department of Licenses and Inspections, Allied Construction and the Army Corps of Engineers to obtain a more precise estimate of the total cost to make the needed repairs to the plaintiffs' homes. Although the June 26, 2000 report of the inventory concluded that many repairs were necessary, includ-

ing retrofitting of the gas-fired heaters and hot water exhaust systems, it also found that "[n]one of the deficiencies observed at the sixty-one inspected properties are 'imminently dangerous' as defined in the *Philadelphia Property Maintenance Code,* Section PM–308.1 and there is no immediate threat to the health and safety of the residents."

Nevertheless, Plaintiffs aver, when Defendant Mayor Street learned of the additional costs for new repairs, he conspired with Defendants Herbert Wetzel, Executive Director of the RDA, and Edward McLaughlin, Commissioner of the Department of Licenses and Inspections, and directed that all construction immediately cease, that no further repairs be made, and that the residences be left in their existing state of disrepair and partial completion. On July 21, 2000, when Plaintiffs reported to City Hall to discuss the status of the repair work, they were each given a letter from Defendants Street and McLaughlin informing them that their homes were " . . . imminently dangerous because the 'B-vents' that exhaust the gas-fired heaters are located in the return air plenum space in violation of the *Philadelphia Mechanical Code* requirements . . ." and had the potential to emit carbon monoxide. The City's letter further ordered Plaintiffs to vacate the premises before the start of the heating season (which the City had determined to be September 6, 2000), and informed them that their homes would be demolished by the City. The letters also advised the plaintiffs that if they wished to appeal "this violation," they must apply to the Board of Building Standards within ten days, and that a court order would be necessary to halt demolition work. By separate letter dated August 1, 2000, the City offered to pay $153,000 for each affected home, $4,000 of which was payable upon execution of the settlement and sale agreement, followed

by a $21,000 payment three days thereafter. The remaining $125,000, less any liens, mortgages or other setoffs would be paid at closing.

By their complaint, Plaintiffs allege that the defendants have conspired and undertaken to cause a depreciation in the property values in the 62nd, Osage and Pine Street neighborhood and to terrorize, mislead and threaten the residents of that area into accepting the city's buy-out offer by telling them that if they did not accept the offer by September 6, 2000, they would be paid a substantially lesser amount when their homes were demolished. Although thirty homeowners agreed to the city's buy-out offer, the plaintiffs here did not. They have since filed petitions and obtained injunctions in the Philadelphia County Court of Common Pleas to enjoin the defendants from demolishing their homes and from disconnecting their gas supplies.

Plaintiffs' complaint seeks damages under 42 U.S.C. § 1983 for deprivation of their rights to due process of law, unjust taking of their property under the Fifth Amendment to the U.S. Constitution, and for the City's failure to train and follow policy and under the state law theories of breach of contract, civil conspiracy and for specific performance. By this motion to dismiss, the defendants assert that since each of the claims against them arise out of the City's decision to exercise its police powers under state law to begin eminent domain proceedings to recover a blighted residential area and the Pennsylvania Eminent Domain Code provides a complete and exclusive procedure for all condemnations, this Court should abstain from exercising its jurisdiction.

### Standards Governing Motions to Dismiss

A dismissal without retention of jurisdiction on abstention grounds has been held to be in the nature of a dismissal under Fed.R.Civ.P. 12(b)(6). *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 745 (3rd Cir.1982), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, accepting the facts alleged as true along with all reasonable inferences that can be drawn therefrom and construing them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd Cir.1990); *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd cir.1990). Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3rd Cir.1988).

Alternatively, motions to dismiss on abstention grounds have also been considered to be in the nature of motions challenging subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *See, e.g., Frempong–Atuahene v. Redevelopment Authority of the City of Philadelphia,* 1999 WL 167726 (E.D.Pa.1999). Of course, when subject matter jurisdiction is challenged under Fed.R.Civ.P. 12(b)(1), it is the plaintiff who bears the burden of demonstrating that subject matter jurisdiction exists. *See: Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3rd Cir.1991). In determining whether a sufficient showing of jurisdiction has been made, any evidence may be reviewed and any factual disputes resolved regarding the allegations giving rise to jurisdiction, since it is for the Court to resolve all factual disputes involving the existence of jurisdiction. *Sitkoff v. BMW of North*

*America, Inc.,* 846 F.Supp. 380, 383 (E.D.Pa.1994). In contrast, if the attack to jurisdiction is facial, that is, to the allegations of jurisdiction stated in the complaint, the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present. *Id.* If jurisdiction is based on a federal question, the pleader claiming federal jurisdiction must show that the federal claim is not frivolous. *Radeschi v. Commonwealth of Pennsylvania,* 846 F.Supp. 416, 419 (W.D.Pa.1993), citing *Bartholomew v. Librandi,* 737 F.Supp. 22 (E.D.Pa.), *aff'd,* 919 F.2d 133 (3rd Cir. 1990). Only if it appears to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction may the complaint be dismissed. *Kronmuller v. West End Fire Co. No. 3,* 123 F.R.D. 170, 172 (E.D.Pa.1988). *See Also: Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977).

### Discussion

As a general rule, federal courts are bound to adjudicate all cases and controversies that are properly before them, they cannot abdicate their authority or duty in any case in favor of another jurisdiction. *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 2512–2513, 105 L.Ed.2d 298 (1989), *citing, inter alia, Chicot County v. Sherwood,* 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546 (1893). Abstention is a judicially-created doctrine, born out of a concern for the maintenance of our federal system, under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue. *Heritage Farms,* 671

F.2d at 746. As abstention is the exception and not the rule, abstention from the exercise of federal jurisdiction is appropriate only under certain limited circumstances. *Chez Sez III Corp. v. Township of Union,* 945 F.2d 628, 630–631 (3rd Cir. 1991), *citing, Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984).

The U.S. Supreme Court has articulated some four primary "types" of abstention in its decisions in *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941), *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[1] Under *Pullman,* abstention may be appropriate where a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question under principles of comity in order to avoid needless friction with state policies. *Railroad Comm'n v. Pullman,* 312 U.S. at 500, 61 S.Ct. at 645; *Hughes v. Lipscher,* 906 F.2d 961, 964 (3rd Cir.1990). The first step in a *Pullman* analysis is to ascertain whether: (1) there are uncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) there are state law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and (3) a federal court's erroneous construction of the state law would be disruptive of important state policies. *Chez Sez,* 945 F.2d at 630. If the district court finds that all three of these

---

**1.** As the Defendants in this case do not allege that abstention under *Younger* is appropriate, we see no need for a discussion of the *Younger* abstention doctrine here.

"special circumstances" are present, it must then make a discretionary determination as to whether abstention is in fact appropriate under the circumstances of the particular case, based on the weight of these criteria and other relevant factors. *Id.*

*Burford* abstention, in turn, is appropriate where a difficult question of state law is presented which involves important state policies or administrative concerns. *Heritage Farms,* 671 F.2d at 746, citing *Burford,* 319 U.S. at 332–334, 63 S.Ct. at 1106–1107. In this situation, a federal court may abstain to avoid disrupting the efforts of a state "to establish a coherent policy with respect to a matter of substantial public concern." *Id.,* quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244.

*Colorado River* abstention is somewhat related to *Burford* in that it established permission for district courts, in exceptional circumstances, to dismiss a federal action because of parallel state-court litigation. *Chantilly Farms,* 2001 WL 290645, 2001 U.S. Dist. LEXIS at *30, citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Bryant v. N.J. Department of Transportation,* 1 F.Supp.2d 426, 436 (D.N.J.1998). Indeed, *Colorado River* holds that in assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation and the order in which jurisdiction was obtained by the concurrent forums. *Colorado River,* 424 U.S. at 818–819, 96 S.Ct. at 1247. No one factor is necessarily determinative; rather a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is re-

quired and only the clearest of justifications will warrant dismissal. *Id.* Thus, in order for *Colorado River* abstention to be appropriate, there must be parallel state and federal litigations that are "truly duplicative," and the district court must consider (1) which court first assumed jurisdiction over a relevant res, if any; (2) whether the federal court is inconvenient; (3) whether abstention would aid in avoiding piecemeal litigation; (4) which court first obtained jurisdiction; (5) whether state or federal law applies; and (6) whether the state proceedings will sufficiently protect the rights of the federal plaintiffs. *Rycoline Products, Inc. v. C & W Unlimited,* 109 F.3d 883, 890 (3rd Cir. 1997); *Trent v. Dial Medical Of Florida Inc.,* 33 F.3d 217, 223 (3d Cir.1994).

■ In this case, although the plaintiffs did succeed in enjoining the defendant City, Department of Licenses and Inspections and its Commissioner from demolishing their homes until further Court Order or the finalization of any eminent domain proceedings and to compel the City defendants to install new heating units in their homes, it appears that the Philadelphia County Court of Common Pleas has since marked that action as discontinued and ended and that no other eminent domain or other proceedings have since been commenced in state court. As it therefore appears that there are no parallel proceedings, we conclude that abstention under the *Colorado River* doctrine is inappropriate.

■ Likewise, we find no unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional issues with which we are presented here. To be sure, the propriety of Defendants' alleged actions may be clearly resolved under either or both federal and state law and the eminent domain code in particular is quite clear in its directives.

Thus, we decline to abstain under *Pullman*.

■ There are, however, significant state policies and administrative concerns underlying a state's eminent domain proceedings. The United States Supreme Court has recognized that although an eminent domain proceeding is deemed for certain purposes of legal classification a "suit at common law," it is of a special and peculiar nature intimately involved with sovereign prerogative. *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25,, 28, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058 (1959).

■ Pennsylvania's Eminent Domain Code, 26 P.S. § 1–101, *et seq.*, provides "a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor ..." 26 P.S. § 1–303. All condemnation proceedings shall be brought in the Court of Common Pleas of the county in which the property is located. 26 P.S. § 1–401. Under 26 P.S. § 1–402(a), "[c]ondemnation shall be effected only by the filing in court of a declaration of taking with such security as may be required under section 403(a) ..." If a condemnee wishes to object to the condemnation of his or her property, they may, "[w]ithin thirty days after being served with the notice of condemnation ...

file preliminary objections to the declaration of taking." 26 P.S. § 1–406(a). Preliminary objections are the exclusive method for challenging (1) the power or right of the condemnor to appropriate the condemned property; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections constitutes a waiver thereof. *Id.* Thus, the Eminent Domain Code fully protects the rights of the property owner and guarantees to him the constitutional safeguards to which he is entitled, including appropriate appellate review. *Valley Forge Golf Club v. Upper Merion Township*, 422 Pa. 227, 230, 221 A.2d 292, 293 (1966); *Frempong–Atuahene v. Redevelopment Authority of the City of Philadelphia*, 1999 WL 167726 at *3.[2]

Indeed, as the Pennsylvania statute itself recites that "it is intended by this act to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes ...," we shall exercise our discretion and abstain under *Burford* to avoid disrupting the efforts of the Commonwealth of Pennsylvania "to establish a coherent policy with respect to a matter of substantial public concern." *Heritage Farms*, 671 F.2d at 746 quoting *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244.[3] For these reasons,

**2.** Although not specifically raised by Defendants, it further appears that the plaintiffs' claim under Count II of their complaint that the defendants violated their civil rights by taking their property without just compensation is not yet ripe. *See, e.g., Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985) and *Baranowski v. Borough of Palmyra*, 868 F.Supp. 86, 88 (M.D.Pa.1994) ("if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation

Clause until it has used the procedure and been denied just compensation.")

**3.** We note that our holding today is in accord with those of many of the other federal courts which have been confronted with these identical issues. *See, Frempong–Atuahene v. Redevelopment Authority of the City of Philadelphia*, 1999 WL 167726 at *3 and *Eddystone Equipment and Rental Corp. v. Redevelopment Authority of the County of Delaware*, 1988 WL 52082 (E.D.Pa.1988) at *1 ("[t]o avoid unwarranted interference with state court jurisdiction, federal courts presented with (civil

we grant the defendants' motion and dismiss the plaintiffs' federal law claims for lack of subject matter jurisdiction.

Finally, as to the plaintiffs' state law claims for breach of contract, conspiracy and specific performance, we decline to exercise our supplemental jurisdiction over them. *See:* 28 U.S.C. § 1367(c)(3). As a consequence, this entire action shall be dismissed pursuant to the attached Order.

## *ORDER*

AND NOW, this 18th day of June, 2001, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed.R.Civ.P. 12(b)(1) and Plaintiffs' Response thereto, it is hereby ORDERED that the Motion is GRANTED for the reasons set forth in the preceding Memorandum Opinion.

rights) actions of this kind have almost uniformly dismissed them,)" *citing, Forest Hills Utility Co. v. City of Heath,* 539 F.2d 592, 594–596 (6th Cir.1976) (exercise of jurisdiction over action to enjoin condemnation would require excessive federal interference with a state regulatory scheme); *Muskegon Theatres, Inc. v. City of Muskegon,* 507 F.2d 199, 202 (6th Cir.1974) (in response to plaintiff's argument that if it waits for condemnation it will encounter *Younger* abstention, the absence of a pending condemnation proceeding is not a bar to dismissal of plaintiff's complaint); *Hohensee v. State Department of Highways,* 383 F.2d 784 (3rd Cir.1967) (ac-

tion to recover judgment for taken property dismissed because plaintiff had not invoked aid of state court); *Vartan v. Harristown Dev. Corp.,* 655 F.Supp. 430, 438 (M.D.Pa.1987) (property owner's Section 1983 claim challenging proposed condemnation on procedural and substantive due process grounds dismissed because plaintiff had opportunity to file preliminary objections in state court once condemnation proceedings commenced); and *Kadash v. City of Williamsport,* 362 F.Supp. 1343, 1346–47 (M.D.Pa.1973) (court lacked jurisdiction over action to enjoin condemnation on grounds that it was for a non-public use).