Noel MULLEN, a minor,
et al., Plaintiffs,

v.

John W. THOMPSON,
et al., Defendants.

No. CIV A 01–1087.

United States District Court,
W.D. Pennsylvania.

Aug. 1, 2001.

Christopher K. McNally, Israel, Wood & Puntil, Pittsburgh, PA, for plaintiffs.

Ira Weiss, Allegheny County Law Department, John H. Rushford, Pittsburgh, PA, for defendants.

## MEMORANDUM

LANCASTER, District Judge.

Plaintiffs filed this class action lawsuit under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Pennsylvania law. Plaintiffs are nine students enrolled in the Pittsburgh Public Schools and their parents. They allege that defendants, the Superintendent of the Pittsburgh Public Schools and members of the school district's Board of Education ("Board"), voted to close the neighborhood schools they attended in violation of several federal and state provisions: the Due Process Clause of the Fourteenth Amendment to the United States Constitution; plaintiffs' right to petition the government as guaranteed by the First Amendment to the United States Constitution; the Pennsylvania School Code, 24 Pa. Const. Stat. § 7–780; and the Pennsylvania Constitution.

Defendants have moved to dismiss plaintiffs' complaint under Fed.R.Civ.P. 12(b)(1). For the reasons that follow, the motion is granted.

## I. *BACKGROUND*

Accepting plaintiffs' allegations as true, the following is the factual predicate of the case. On November 30, 2000, the Board held a meeting and afforded the public the opportunity to address the Board on the school budget for the fiscal year 2001 and the means to finance the budget. The meeting was advertised in a newspaper of general circulation, but the notice did not state specifically that school closings were to be discussed. Nevertheless, several of the plaintiffs and others appeared at the meeting and spoke out against using school closings as a means of budget control. On December 20, 2000, the Board met for its regularly scheduled legislative meeting. At the meeting, the Board adopted its budget for the 2001 fiscal year. Among the budget provisions adopted was the closing of eight schools.

Thereafter, plaintiffs filed this suit seeking to enjoin the Board from closing the schools. Plaintiffs assert that the December 20, 2000 meeting to close the schools occurred before three months had passed after the November 30 meeting that was held for public comment on the closings. Plaintiffs contend that the Pennsylvania School Code specifically requires a three month waiting period. As a result of this alleged violation of the state statute, plaintiffs assert several federal and state law claims. Defendants have moved to dismiss plaintiffs' complaint contending that plaintiffs' allegations, if true, fail to state a

violation of federal law, thus the court lacks subject matter jurisdiction over the dispute.

## II. STANDARD OF REVIEW

When a court considers a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the standard of review differs depending on whether the defendant is making a "facial" or "factual" jurisdictional attack. Defendants in this case make a facial attack to this court's jurisdiction to hear plaintiff's complaints. In a facial jurisdictional attack, defendants assert that considering the allegations of the complaint as true and drawing all reasonable inferences in favor of plaintiffs, the allegations of the complaint are insufficient to establish a federal cause of action. *Coles v. City of Philadelphia,* 145 F.Supp.2d 646 (E.D.Pa.2001).[1] *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977).

## III. DISCUSSION

### A. Plaintiffs' Section 1983 Claims

Plaintiffs bring their claims under 42 U.S.C. § 1983. This statute originated as section 1 of the Civil Rights Act of 1871. In order to recover in a section 1983 action, plaintiffs must prove two essential elements: 1) defendants deprived plaintiffs of a right secured by the Constitution or laws of the United States; and 2) defendants deprived plaintiffs of this federal right while acting under color of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Section 1983 does not create substantive rights. It only allows plaintiffs to recover damages for violations of rights protected by other federal laws or by the United States Constitution. *Wilson v. Garcia,* 471 U.S. 261, 278, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

### 1. Due Process of Law

Plaintiffs contend that by closing the schools in noncompliance with the Pennsylvania School Code, defendants violated plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Their theory appears to be simply that because Pennsylvania has established a procedure to close a school, the failure to adhere to that procedure denies them the due process of law. Defendants contend the due process claim fails because plaintiffs lack a constitutionally protected liberty or property interest in an education at any given school building, and without such interest, the Due Process Clause of the Fourteenth Amendment is inapplicable. Defendants are correct.

The Due Process clause of the Fourteenth Amendment provides in pertinent part: "nor shall any State deprive any person of life, liberty, or property, without due process of law...." Therefore, any analysis of a due process claim must begin with the question of whether plaintiffs have a liberty or property interest in the benefit that the state took away. If the plaintiffs have no constitutionally recognized interest in that benefit, the Due Process Clause of the Fourteenth Amendment is inapplicable. *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

A constitutionally protected interest can be created in two ways: by the United States Constitution or by state law. In this case, plaintiffs contend that they have a state-created property interest in keep-

---

1. Publication page numbers are not available for this case. An alternative citation for it is

145 F.Supp.2d 646.

ing the school of their choice open. They contend the state created this interest in the Public School Code of 1949, 24 Pa. Const. Stat. § 7–780. Section 7–780 provides, in substance, that before a local school board can permanently close a public school, the board must hold a public hearing on the issue not less than three months prior to the decision, and notice of the hearing must be given in a newspaper of general circulation at least fifteen days prior to the date of the hearing. Plaintiffs' reliance on this statute, however, is misplaced.

 As stated above, a state law can create a property interest in a benefit that the state cannot take away without due process of law. The Supreme Court has made clear, however, that a state law that establishes purely procedural rules for the granting or denial of a benefit does not, standing alone, also create a constitutionally recognized liberty or property interest in that benefit. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Restated, a state law that establishes purely procedural rules does not create federal due process rights. Rather, only those state laws that place a substantive limitation on official discretion in the decision to grant or deny the benefit itself—not in the process leading to that decision—create a property interest that is entitled to constitutional protection under the Due Process clause. *Id.* at 249–50, 103 S.Ct. 1741. The Court of Appeals for the Third Circuit follows the teachings of *Olim. See Layton v. Beyer,* 953 F.2d 839, 845 (3d Cir.1992); *Stephany v. Wagner,* 835 F.2d 497, 500 (3d Cir.1987).

 Section 7–780 of the Pennsylvania School Code clearly provides only procedural rules to govern school officials in the closing of a school. It does not place any substantive limitation on the school officials' discretion on *whether* to close a school. Indeed, elsewhere in the Code, the Pennsylvania Legislature expressly granted school officials unfettered discretion to close schools, and they may do so for any lawful reason. *See* 24 Pa. Const. Stat. § 13–1311.[2]

In summary, Section 7–780 of the Pennsylvania School Code establishes only a procedure to guide school officials in the manner that schools are to be closed. Therefore, it does not create for the students affected by the closure any constitutionally recognized property interest in an education at that school. Accordingly, while the Board's alleged failure to comply with section 7–780 may be wrongful under state law, it does not violate plaintiffs' federal due process rights.

 Nor am I persuaded by plaintiffs' alternate argument that because the Pennsylvania Constitution grants them the right to a free public education, they have a state created property interest to be educated at the school of their choice. Pennsylvania indeed has created a right to a free public education under its Constitution. *See* Pa. Const. Art. 3, § 14 ("The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."). Thus, plaintiffs cannot be denied a free public education without being afforded due process protection. Defendants, how-

---

**2.** Section 1311 of the Code provides in pertinent part:

§ *13–1311 Closing Schools*
(a) The board of school directors of any school district may, on account of the small number of pupils in attendance, or the con-

dition of the then existing school building, or for the purpose of better graduation and classification, or for other reasons, close any one or more of the public schools in its district.

ever, have not denied plaintiffs an education. The students are simply being reassigned to other schools within the school district.

It is important to recognize that the issue in this case is not whether students have a state-created right to a free public education. They clearly do. The properly framed issue is whether plaintiffs have a state-created right to receive that education at the school of their choice. The Pennsylvania Constitution, Pennsylvania statutory law, and Pennsylvania common law recognize no such right.

### 2. *First Amendment Claim*

Plaintiffs also contend that the procedure defendants followed to close the schools violated their First Amendment right to petition the government for grievances. Plaintiffs' theory appears to be that because the procedure Pennsylvania adopted to govern local school districts in closing schools (section 7–780) allowed for public participation in the decision-making process, when the Board failed to fully comply with that procedure, it effectively denied them their First Amendment right to petition the government for grievances. This claim is without merit.

■ The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition the government for redress of grievances. The government is prohibited from infringing upon these guarantees

either by a general prohibition against certain forms of advocacy or by imposing sanctions for the expression of particular views it opposes. *Smith v. Arkansas State Highway Employees Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). Restated, under First Amendment jurisprudence, a citizen can speak freely and petition the government openly while being protected by the First Amendment in doing so. The right to petition the government for redress of grievances, however, does not impose a correlative obligation on government officials to listen to those grievances. *Smith*, 441 U.S. at 465, 99 S.Ct. 1826. Indeed, the First Amendment does not require a school board to hold public meetings for the purpose of gaining input from the public. *Minnesota State Board For Community Colleges v. Knight*, 465 U.S. 271, 283, 104 S.Ct. 1058, 79 L.Ed.2d 299 ("[T]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.").[3] Nor does the First Amendment right to petition the government require state officials to adopt or follow any specific procedure to allow or weigh public opinion in forming policy. *Knight*, 465 U.S. at 285, 104 S.Ct. 1058 ("However wise or practicable various levels of public participation in various kinds of policy decisions may be, [the Supreme Court] has never held, and nothing in the Constitution suggests it should hold, that government must provide for such participation.").

---

3. The Court explained as follows:

Policy making organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. Legislatures throughout the nation, including Congress, frequently enact bills on which no hearings have been held or on which testimony has been received only from a select group.

Executive agencies likewise make policy decisions of widespread application without permitting unrestricted public testimony. Public officials at all levels of government make policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policy-making would work a revolution in existing government practices.

*Id.* at 284, 104 S.Ct. 1058.

■ In this case, plaintiffs do not claim that the Board has prohibited them from advocating against closing the schools. Clearly, plaintiffs have done so. Nor do plaintiffs claim any retaliation or discrimination for which the First Amendment may provide protections. Rather, plaintiffs' First Amendment claim is simply that the Board rendered its decision forty-five days after the meeting at which they spoke in opposition to closing the schools, rather than three months afterwards. The Board's action in closing these schools may violate the Pennsylvania School Code, but that does not establish that its action violated plaintiffs' First Amendment rights.

### B. *Plaintiffs' State Law Claims*

In addition to their federal claims, plaintiffs have brought several state law claims that plaintiffs urge the court to hear under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367. I will not do so.

■ Supplemental jurisdiction is designed to permit the parties to resolve, in one judicial proceeding, all claims arising out of a common nucleus of operative fact, without regard to their federal or state character. The purpose of supplemental jurisdiction is to promote convenience and efficient judicial administration. *See generally* David D. Siegal, *Practice Commentary: The 1990 Adoption of § 1367, Codifying "Supplemental" Jurisdiction,* 28 U.S.C.A. § 1367, at 829–838 (1993).

■ Whether a federal district court will exercise supplemental jurisdiction over purely state law claims is within the court's discretion. *See Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1284 (3d Cir.1993). The primary justification for exercising supplemental jurisdiction, however, is absent if the substantive federal claim is no longer viable.

There is no bright line rule for determining whether a supplemental state law claim should be dismissed when the federal law claims have been eliminated before trial. The Supreme Court has made clear, however, that normally the balance of factors, i.e., judicial economy, convenience, fairness, and comity, "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

Based on this well established law, I find that several reasons support the conclusion that I should not exercise supplemental jurisdiction over plaintiffs' state law claims. First, plaintiffs' federal claims are not viable. Second, the interests of judicial economy, convenience, fairness, and comity to the courts of Pennsylvania all weigh in favor of not hearing plaintiffs' state law claims. Therefore, plaintiffs' state law claims will also be dismissed, but without prejudice to plaintiffs' right to refile them in state court.

### IV. *CONCLUSION*

Local school officials closing a school building and reassigning the students to other schools is not an uncommon occurrence. On the contrary, it occurs on a regular and routine basis in urban school systems nationwide. Schools are closed and students reassigned for a number of reasons. For example, schools are closed and students reassigned because of budgetary constraints, shifts in population, racial unbalance in student populations, or simply because older buildings have become obsolete. School buildings have been closed in Pittsburgh before, and will be again. Often the decision to close a neighborhood school and reassign students generates public opposition. In this case, however, plaintiffs have shown their displeasure at being reassigned to a different

school by trying to make the proverbial "federal case out of it."

Whether the Board's action in deciding to close these schools after a forty-five day waiting period rather than after a three month waiting period is a violation of the Pennsylvania School Code, and if so, does that violation warrant the relief plaintiffs seek, is a question more properly addressed by the state courts. The Board's action, however, did not violate the United States Constitution.

The motion to dismiss for lack of federal jurisdiction is granted.