# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Save Our Saltsburg Schools,  :
                    Appellant  :
                                         :
                 v.                       :
                                         :
River Valley School District, Rick  :
Harper, individually, and in his  :
capacity as an elected member of  :
Defendant District's board, Anthony  :
Canzano, individually, and in his  :
capacity, as an elected member of  :
Defendant District's board, Molly Stiles, :
individually, and in her capacity as  :
an elected member of Defendant  :
District's board, Connie Constantino,  :
individually, and in her capacity as  :
an elected member of Defendant  :
District's board, Holly Gibson,  :
individually, and in her capacity as  :
an elected member of Defendant  :
District's board, Mary Whitefield,  :
individually, and in her capacity as  :
an elected member of  :  No. 1140 C.D. 2021
Defendant District's board  :  Argued: October 11, 2022

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON         FILED: November 7, 2022

        Save Our Saltsburg Schools (SOSS) appeals from the September 29,

2021 order of the Court of Common Pleas of Indiana County (trial court). The trial

court sustained preliminary objections filed by the River Valley School District (District) and six members of the School Board (Board Members) (together, Appellees). The effect of the trial court's order was to uphold Appellees' decision to close Saltsburg Middle-High School (Saltsburg High) and consolidate its students into Blairsville Middle-High School (Blairsville High). Upon review, we affirm.

## I. Procedural & Factual Background

SOSS is a group representing Saltsburg area students, parents, community members, and business owners. Reproduced Record (R.R.) at 40a. SOSS filed an initial complaint against the District on June 7, 2021. R.R. at 19a.[1] The District filed preliminary objections on June 29, 2021, and SOSS filed a second amended complaint (Complaint) on August 9, 2021, adding the Board Members as defendants. R.R. at 18a & 26a. The following facts are taken from the Complaint.

Until 2021, the District had two middle-high schools, Saltsburg High and Blairsville High. R.R. at 42a. The District's mission statement declares that the District "has an obligation to ensure that all [District] students will have equal access to a high-quality education[.]" *Id*. In February 2020, the Board Members voted to schedule a public hearing to discuss closing Saltsburg High. *Id*. at 43a. Such

---

[1] SOSS previously filed a complaint against the District in federal court in May 2021; that court dismissed SOSS's federal equal protection claims with prejudice for lack of merit and dismissed SOSS's additional state law claims without prejudice in order for SOSS to refile with the trial court. *Save our Saltsburg Schools v. Blairsville-Saltsburg Sch. Dist.*, No. 2:21-cv-601 (W.D. Pa. June 1, 2021).

hearings are required by Section 780 of the Public School Code of 1949 (Public School Code).[2] 24 P.S. § 7-780.

The Complaint alleges that the Board Members never considered the alternative of keeping Saltsburg High open and closing Blairsville High, which is an older building; that before the Section 780 hearing, some Board Members made public statements about the proposed closure based on what SOSS characterizes as faulty information; that SOSS asked the Board Members to provide more information but the Board Members declined to do so; that Board Members repeatedly indicated publicly before the hearing that the closure was moving forward; and that the Board Members "did not care" about the impact of the closure on Saltsburg High's students. R.R. at 43a-44a.

The Section 780 hearing was held virtually, due to the COVID-19 pandemic, on January 13-14, 2021. R.R. at 44a. The Complaint states that the hearing should have been an occasion for community input before a decision was made, but instead began with a statement by the District's superintendent that the District planned to close Saltsburg High, convert it into a charter school for younger students, and consolidate its students into Blairsville High. *Id*. Saltsburg students, alumni, parents, business owners, and community members voiced opposition to the plan, including the projected impact of lengthier commutes to Blairsville High on Saltsburg area students' educational and extracurricular experiences. *Id*. at 45a.

On April 9, 2021, SOSS provided the District with a report setting forth similar and additional concerns. R.R. at 45a. Nonetheless, on April 22, 2021, the Board Members voted to close Saltsburg High and proceed with the consolidation at

---

[2] Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702. Section 780 of the Public School Code was added by the Act of April 4, 1984, P.L. 190, 24 P.S. § 7-780, effective September 1, 1984.

3

the end of the 2020-21 school year.[3]  *Id*.  The Complaint states that in July 2021, the District superintendent stated on a local radio show that the District was commissioning a study and report on developing a new athletic facility.  *Id*. at 46a.

The Complaint alleges that the Board Members improperly decided to close Saltsburg High before the Section 780 hearing and without public commentary or oppositional information.  R.R. at 45a-46a.  The Complaint adds that plans for a new athletic facility were not discussed or voted on publicly by the Board, but that those plans, rather than the best interests of students, formed the true motivation for closing Saltsburg High.  *Id*. at 47a.  As such, SOSS believes its procedural due process rights under the Pennsylvania Constitution were violated and that the Board Members breached a fiduciary duty to SOSS and the Saltsburg community.  *Id*. at 47a-49a.  The Complaint requests a jury trial and seeks money damages and injunctive and/or declaratory relief.  *Id*. at 49a.

After SOSS filed the Complaint, Appellees renewed their preliminary objections, asserting that the Complaint failed to establish a due process right to education at the school of one's choice, that no fiduciary duty existed between SOSS and the Board Members, and that the Board Members were immune from SOSS's suit under both the doctrine of high public official immunity and Pennsylvania's Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-8564.  Trial Ct. Op. at 6; R.R. at 31a.  Argument was held before the trial court on September 15, 2021.  R.R. at 18a.  On September 29, 2021, the trial court issued its

---

[3] The only high school currently listed on the District's website is River Valley High School (formerly Blairsville High).  There is also a River Valley Middle School next to the high school and the District announced that the opening ceremony for a STEAM (Science, Technology, Engineering, and Mathematics) Academy at the former Saltsburg High location would take place on September 28, 2022.  *See* https://www.rivervalleysd.org/ (last visited November 4, 2022).

4

opinion and order sustaining Appellees' preliminary objections, after which SOSS timely appealed to this Court. *Id*. at 18a & 26a-36a.

## II. Discussion

In ruling on preliminary objections, this Court accepts as true all well-pleaded allegations of material fact, as well as all inferences reasonably deducible from those facts. *Key v. Pa. Dep't of Corr.*, 185 A.3d 421, 423 n.3 (Pa. Cmwlth. 2018). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id*. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. *Id*. Any doubt must be resolved in favor of the non-moving party. *Id*.

### A. Procedural Due Process

Article I, section 1 of the Pennsylvania Constitution states that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1. A plaintiff's first hurdle in maintaining a procedural due process challenge is to establish the deprivation of a protected property or liberty interest. *Miller v. Workers' Comp. Appeal Bd. (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007). Once a protected interest has been identified, "the basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Lawson v. Pa. Dep't of Pub. Welfare*, 744 A.2d 804, 806-07 (Pa. Cmwlth. 2000).

5

Article III, section 14 of the Pennsylvania Constitution states: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." PA. CONST. art. III, § 14. The right to free public education has been held to include due process protection. *Mullen v. Thompson*, 155 F. Supp. 2d 448, 452 (W.D. Pa. 2001), *aff'd*, 31 F. App'x 77 (3d Cir. 2002) (unreported).[4] However, "a state law that establishes purely procedural rules for the granting or denial of a benefit does not, standing alone, create a constitutionally recognized liberty or property interest in that benefit." *Mullen*, 155 F. Supp. 2d at 452.

Section 780 of the Public School Code states: "In the event of a permanent closing of a public school or substantially all of a school's facilities, the board of school directors shall hold a public hearing on the question not less than three (3) months prior to the decision of the board relating to the closing of the school." 24 P.S. § 7-780.

In *Mullen*, the plaintiffs were Pittsburgh public school students. 155 F. Supp. 2d at 450. The district's superintendent and board failed to properly advise the public or otherwise comply with Section 780 before voting to close the schools the plaintiffs were attending, which led the plaintiffs to sue in federal court alleging violations of both the United States and Pennsylvania Constitutions. *Id.* The federal district court concluded that Section 780 is procedural in nature and places no substantive limitations on school authorities' discretion to close schools. *Id.* at 452 (citing Section 1311(a) of the Public School Code, 24 P.S. § 13-1311(a), which states that a school board "may, on account of the small number of pupils in attendance, or

---

[4] "Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value. Unreported federal court decisions may also have persuasive value." *Nagle v. Trueblue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016).

6

the condition of the then existing school building, or for the purpose of better graduation and classification, *or for other reasons*, close any one or more of the public schools in its district[.]") (emphasis added). This Court has explained that

> Section 1311(a) . . . gives broad discretionary power to school boards to close public schools within their districts. The decision to close a school, therefore, is within a board's discretion unless its action is fraudulent or arbitrary and capricious. Moreover, an equity court will grant relief only if it can be clearly shown that the board acted in such a manner. We must conclude, therefore, that the appellants' complaint was properly dismissed, for it is clear to us as it was to the court below, that the complaint alleges no facts which would justify a court in exercising jurisdiction. The allegations do demonstrate a difference of opinion as to the desirability of closing the Brown's Mill Elementary School; but, as we will reiterate, "Only in those instances wherein arbitrariness, caprice or wrongdoing characterize a board's act will a court interfere."

*Beegle v. Greencastle-Antrim Sch. Dist.*, 401 A.2d 374, 375 (Pa. Cmwlth. 1979) (citations omitted).

Here, the trial court concluded that because of the inclusion of "[i]n the event of a permanent closing of a public school" in Section 780, "a plan to close a school, even in a preliminary stage, would necessarily exist prior to the scheduling of a hearing." R.R. at 30a. The trial court explained that the January 2021 Section 780 hearing "provided a forum for public opinion, comment, and the sharing of information by both proponents and opponents of the plan[,]" but the actual adjudication occurred in April 2021 when the Board formally voted to close Saltsburg High. *Id.* Therefore, according to the trial court, SOSS's Complaint failed to plead a viable procedural due process challenge based on the hearing. *Id.* The trial court added that SOSS had not pleaded an underlying protected interest, either,

because the right to a public education in Pennsylvania has never included the right to education at the school of one's choice. *Id*. (citing *Mullen*).

SOSS asserts that a Section 780 hearing is meant to provide the community an opportunity to provide input and express concerns before the decision is made to close a school. SOSS's Br. at 11. SOSS argues that the District and Board Members predetermined the closure of Saltsburg High for personal reasons, including seeking new athletic facilities, and not in the best interests of the students and community; therefore, the hearing was a "sham" and violated the procedural due process rights of SOSS and the community. *Id*. at 11-13 (citing, *inter alia*, *D'Angelo v. Winter*, 403 F. App'x 181, 182 (9th Cir. 2010) (opining that "[a] hearing with a predetermined outcome does not satisfy due process")).

Appellees respond that Section 780 sets forth procedural requirements for school closures, all of which were followed here, and does not prohibit board members from forming or even expressing opinions prior to the hearing. Appellees' Br. at 8. They add that a Section 780 hearing cannot be scheduled without a vote, which requires that board members take at least a tentative position before a hearing can be held. *Id*. They observe that Section 780 hearings are not adjudicatory proceedings, but rather vehicles for school boards to obtain community input before voting. *Id*. They note, as did the trial court, that Section 780's first phrase is "[i]n the event of a permanent closing of a public school"; therefore, the statute itself implies that some level of consensus towards closure has likely already been reached prior to the hearing. *Id*. at 10. They explain that the superintendent's opening statement at the Section 780 hearing was the expression of a plan in the event the Board voted to close Saltsburg High after the hearing, not a statement reflecting that the matter had already been decided, which Appellees deny. *Id*. at 10-11. They add

8

that the gist of SOSS's Complaint is not the Section 780 hearing, but the subsequent vote to close Saltsburg High, which was within the District's discretion and did not violate SOSS's due process rights because there is no right to public education at the school of one's choice. *Id*. at 5-7.

The trial court did not err in concluding that SOSS failed to assert an established constitutional right subject to a due process challenge. In *Mullen*, the federal district court found that Section 780 "establishes only a procedure to guide school officials in the manner that schools are to be closed. Therefore, it does not create for the students affected by the closure any constitutionally recognized property interest in an education at that school." *Id*. at 452. The district court added that there is no federal due process right to a public education at the school of one's choice.[5] *Id*. at 452-53. Although in *Mullen* the plaintiffs raised a substantive due process challenge, for a procedural due process challenge like SOSS's to succeed, an underlying and established substantive right must still be asserted. *See Penjuke v. Pa. Bd. of Prob. & Parole*, 203 A.3d 401, 418 (Pa. Cmwlth. 2019) (concluding that the Prisons and Parole Code, 61 Pa.C.S. §§ 101-7301, vests a technical parole violator with a "statutory entitlement to street time credit sufficient to constitute a right deserving of protection under the Due Process Clause and the procedural safeguards necessary to ascertain and confirm that the state-created right is not arbitrarily abrogated[.]" (quotation marks omitted)).

SOSS is correct that a "sham" hearing with a predetermined outcome violates procedural due process. SOSS's Br. at 12-13 (citing, *inter alia*, *D'Angelo*,

---

[5] Although constitutional protections provided by states may be greater than those at the federal level, "the due process provisions of the United States and Pennsylvania Constitutions are generally treated as coextensive. This Court's due process analysis, therefore, is the same under both federal and state law." *Kovler v. Bureau of Admin. Adjudication*, 6 A.3d 1060, 1062 (Pa. Cmwlth. 2010) (citation omitted).

*Bakalis v. Golembeski*, 35 F.3d 818 (7th Cir. 1994), *Washington v. Kirksey*, 811 F.2d 561 (11th Cir. 1987), and *Matthews v. Harney County*, 819 F.2d 889 (9th Cir. 1987)). However, we agree with Appellees that this premise pertains to hearings that are adjudicative in nature and in circumstances where procedural due process rights have already been recognized, such as hearings in criminal proceedings or before termination of civil employment. Appellees' Br. at 9 n.3. As Appellees point out, SOSS relies on cases involving criminal matters, prison disciplinary proceedings, and hearings on termination of an individual's employment. See SOSS's Br. at 12-13. In those instances, the right at issue and the hearing were directly correlated.

By contrast, nothing in Section 780 or related case law suggests that a Section 780 hearing entails an established due process right to influence, much less dictate, whether a district may close a public school. Districts have broad discretion to close public schools and are only bound to "obtain community *input* at a duly advertised public meeting at least three months before voting to permanently close a school[.]" *Save Our Sch. v. Colonial Sch. Dist.*, 628 A.2d 1210, 1213 (Pa. Cmwlth. 1993) (emphasis added). We therefore agree with the trial court that Section 780 hearings do not implicate procedural due process rights and conclude that the trial court correctly sustained Appellees' preliminary objection in this regard.

**B.  Breach of Fiduciary Duty**

Our Supreme Court has set forth the contours of fiduciary relationships as follows:

> A fiduciary duty is the highest duty implied by law. A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests . . . . This highest duty will be imposed only

10

> where the attendant conditions make it certain that a fiduciary relationship exists.
>
> In some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and *cestui que* trust, attorney and client, guardian and ward, and partners are recognized examples. . . .
>
> Where no fiduciary duty exists as a matter of law, Pennsylvania courts have nevertheless long recognized the existence of confidential relationships in circumstances where equity compels that we do so. Our courts have found fiduciary duties in circumstances where the relative position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other. The circumstances in which confidential relationships have been recognized are fact specific and cannot be reduced to a particular set of facts or circumstances. We have explained that a confidential relationship appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed.

*Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819-21 (Pa. 2017).[6] To prevail on breach of fiduciary duty claims, a plaintiff must establish that a fiduciary or confidential relationship existed between the plaintiff and the defendant, that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit, and that the plaintiff suffered an injury caused by the defendant's breach of fiduciary duty. *See Kaplan v. Cairn Terrier Club of Am.* (Pa. Cmwlth., No. 218 C.D. 2017, filed June 26, 2017), slip op. at 5, 2017 WL 2729667, at *3 (unreported); *see also Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. 2020).

---

[6] The trial court, SOSS, and Appellees have not distinguished between formal fiduciary relationships and confidential relationships based on facts and equity. For purposes of this inquiry, we will use the recognizable term "fiduciary."

11

Here, the trial court construed SOSS's claim as based on the District's mission statement that the District "has an obligation to ensure that all [District] students will have equal access to a high-quality education[.]" R.R. at 42a. The trial court cited federal cases stating that such statements are generally aspirational in nature and therefore insufficient to create a fiduciary relationship. *Id.* The trial court added that SOSS's allegations also failed to aver that any individual students or community members relied on or trusted the Board Members to the high level embodied in a fiduciary relationship or that any Board Members received or were motivated by personal gain, despite expressing an interest in upgraded athletic facilities. *Id.* at 33a. The trial court therefore found the Complaint pleaded no fiduciary relationship and, by extension, no breach of fiduciary duty on the part of the Board Members. *Id.*

SOSS argues that a fiduciary relationship existed because the Board Members were elected by District citizens to run the public schools, a role that entails significant power, including the authority to close schools. SOSS's Br. at 18. Once the Board Members are elected and seated, the community cannot change or affect the Board's decisions. *Id.* Likewise, the community places complete trust in the Board to act in the best interests of the community and its students. *Id.* SOSS asserts that the Board Members breached their fiduciary duty and harmed the community and students by closing Saltsburg High for personal gain, specifically the desire for an enhanced football facility and program. *Id.* at 19. SOSS states that its claims are not based on the District's mission statement, but rather on the nature of the relationship, and that the trial court mischaracterized its claims in this regard. *Id.* at 20-22.

12

Appellees respond that SOSS's Complaint does not allege facts sufficient to establish a fiduciary relationship or duty, much less a breach thereof. Appellees' Br. at 20-21. Appellees aver that fiduciary relationships are generally direct and personal and cannot be extended to the connection between elected officials and their constituents. *Id*. at 22 (citing *Basile v. H & R Block, Inc.*, 52 A.3d 1202, 1211-12 (Pa. 2012), for the premise that confidential relationships are "not amenable" to application to a non-individualized or unspecific class or group of potential plaintiffs). Appellees assert that to the extent SOSS relies on the District's mission statement, such statements are aspirational rather than binding, and that while SOSS now claims the trial court misstated its position, this was precisely the argument SOSS made to the trial court. *Id*. at 21 n.10 (citing SOSS's Complaint & trial court brief in opposition to preliminary objections; R.R. at 42a-43a & 84a-85a). Appellees again deny that the Board Members were motivated by or received personal gain from closing Saltsburg High and that SOSS's accusations are "mere conjecture or speculation" unsupported by well-pleaded facts in the Complaint. *Id*. at 22. Appellees criticize SOSS's assertion of a fiduciary relationship as an attempt to sidestep the extensive discretion regarding school closure placed in school boards by Section 1311 of the Public School Code. *Id*. at 24-25.

SOSS's Complaint asserted in Paragraph 12 that the Board Members "had a fiduciary duty to the students and citizens of [the District] to act in the best interests of each and every student of the [D]istrict to ensure that the students would receive the best, safest and most efficient and effective education possible under the circumstances." R.R. at 41a. Paragraphs 16 and 17 quoted the mission statement ("The [District] has an obligation to ensure that all [District] students will have equal access to a high-quality education") and asserted that the District had a fiduciary

13

duty to act in students' best interests such that each receives "equal access to a high-quality education." *Id*. at 42a-43a. Paragraph 55 reiterated that the Board Members have a fiduciary duty to act in students' best interests and that the Board Members breached that duty by voting to close Saltsburg High. *Id*. at 48a.

Whether SOSS's assertion of a fiduciary relationship relies on the District's mission statement[7] or the nature of the relationship between the community and the elected Board members, the trial court did not err in finding no basis in the law for such a relationship with regard to school closures. The extent to which local school board members attain fiduciary status is limited to their capacity to expend taxpayer funds to operate the schools. *See* Section 608 of the Public School Code, 24 P.S. § 6-608 (providing that school officials shall be liable to districts for public school funds expended outside purposes set forth in Public School Code); *Pa. Hum. Rels. Comm'n v. Sch. Dist. of Phila.*, 654 A.2d 96, 100 (Pa. Cmwlth. 1995); *see also Fegley v. Morthimer*, 202 A.2d 125, 126-27 (Pa. Super. 1964) (defamation action against newspaper for asserting that plaintiff, a school board member, breached fiduciary duty by overpaying public funds to buy property from a political and personal ally). SOSS has made no allegations that Board Members have improperly managed the District's finances. Moreover, when school board members are elected by a locality, their primary role may be the direction and operation of schools in the best interests of students, but as stated above, they also owe a fiscal duty to the community as a whole, and closure of a school, however distressing to some, may be in the overall financial interest of the locality.

---

[7] Federal cases suggest that mission statements, while largely aspirational and not binding, may give rise to enforceable contracts if they constitute sufficiently specific promises. *Vurimundi v. Fuqua Sch. of Bus.*, 435 Fed. App'x 129, 133 (3d Cir. 2011) (discussing *Minehan v. United States*, 75 Fed. Cl. 249, 260 (Fed. Cl. 2007)). However, SOSS has not alleged claims sounding in contract. *Laurel Rd. Homeowners Ass'n v. Freas*, 191 A.3d 938, 949 (Pa. Cmwlth. 2018).

Moreover, the fiduciary relationship and duty SOSS posits with regard to school closures conflicts with the clear legislative statements in Sections 1311 and 780 of the Public School Code. Local school boards must hold a properly noticed public hearing at which the community may voice opposition to a proposed closure, but regardless of that opposition, boards have significant discretion thereafter to vote for and order a closure so long as the decision is not arbitrary, capricious, or fraudulent. *Mullen*, 155 F. Supp. 2d at 452. The trial court correctly sustained Appellees' preliminary objection in this regard.[8]

### III. Conclusion

In closing, we note and agree with the trial court's expression at the end of its opinion that it was sympathetic to SOSS's desire to keep Saltsburg High open and that it recognized the "impassioned efforts" SOSS took in that regard. R.R. at 36a. However, the trial court added that it was bound to apply the law to these facts and sustain Appellees' preliminary objections. As the trial court did not err in doing so, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] In light of concluding that the trial court correctly found the Board Members did not bear a fiduciary duty to SOSS in this context, we do not reach the Board Members' assertion of immunity from SOSS's breach of fiduciary duty claim.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Save Our Saltsburg Schools,     :
          Appellant     :
                           :
          v.              :
                           :

River Valley School District, Rick
Harper, individually, and in his
capacity as an elected member of
Defendant District's board, Anthony
Canzano, individually, and in his
capacity, as an elected member of
Defendant District's board, Molly Stiles,
individually, and in her capacity as
an elected member of Defendant
District's board, Connie Constantino,
individually, and in her capacity as
an elected member of Defendant
District's board, Holly Gibson,
individually, and in her capacity as
an elected member of Defendant
District's board, Mary Whitefield,
individually, and in her capacity as
an elected member of         :   No. 1140 C.D. 2021
Defendant District's board   :

## O R D E R

AND NOW, this 7th day of November, 2022, the Order of the Court of Common Pleas of Indiana County sustaining the preliminary objections of River Valley School District and the individually named defendants and dismissing the Complaint of Save Our Saltsburg Schools is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge