J-A21014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KEVIN HAY AND STEVEN HAY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD MICHEL, INDIVIDUALLY | : | No. 472 EDA 2024 |
| AND AS EXECUTOR OF THE ESTATE | : | |
| OF JOSEPH J. MICHEL, DECEASED, | : | |
| THE ESTATE OF JOSEPH J. MICHEL, | : | |
| DECEASED, DARLENE MICHEL AND | : | |
| MARILYN MICHEL | : | |

Appeal from the Order Entered January 22, 2024
In the Court of Common Pleas of Monroe County Civil Division at No(s):
003787-CV-2022

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED DECEMBER 19, 2024**

Kevin and Steven Hay ("the Hays") appeal from the order sustaining the preliminary objections in the nature of a demurrer filed by Richard Michel, individually and as executor of the Estate of Joseph J. Michel, the estate of Joseph J. Michel, and Darlene and Marilyn Michel ("the Michels").  The Hays maintain that they set forth facts to support their various claims, in particular, breach of a contract not to revoke a will.  Upon review, we affirm.

Doretta ("Dee") and Joseph Michel ("Joe") were married in June 1994.  Dee had two children, Kevin and Steven, prior to marrying Joe.  Joe had three children, Richard, Darlene, and Marilyn, prior to marrying Dee.  Shortly afterwards, they set up the Revocable Living Trust of Joseph J. Michel and

Doretta J. Michel ("the Trust") dated September 21, 1994. They designated

Steven and Richard as trustees. In pertinent part, the Trust provided:

> I. Lifetime Trust: ***During our lifetimes***, our trustees shall keep the principal invested and shall distribute the net income therefrom and the principal itself as follows:
>
>> A. ***As much, even if all, of the net income*** and principal as either of us may from time to time direct in writing shall be paid either to us or as either of us may specify: provided that . . .
>>
>> ***
>>
>> C. any remaining net income shall from time to time be accumulated and added to principal; and
>>
>> D. ***Upon the death of either one of us the survivor shall continue to receive the net income*** from this trust, but shall only ever have the right to withdraw, receive or have paid for their benefit up to one-half (1/2) of the principal of this trust during the survivor's lifetime so that there are assets left to be distributed to our children as provided in Article II below, with the value of the amount of principal subject to withdrawal determined as of the date of death of the first of us to die; however, notwithstanding this restriction on the withdrawal of principal, the principal may be invaded even to exhaustion for medical expenses not covered by insurance.
>
> II. Trusts After Our Death: After the death of both of us, our trustees shall distribute all of the remaining principal and any accumulated income to our five (5) children, Richard W. Michel, of Stroudsburg, Pennsylvania, Darlene J. Michel of Stroudsburg, Pennsylvania, Marilyn J. Michel of Stroudsburg, Pennsylvania, Steven B. Hay of Seattle, Washington, and Kevin Hay of East Stroudsburg, Pennsylvania, in equal shares per stirpes.
>
> VII: Protective Provision: No interest in income or principal shall be assignable by, or available to anyone having a claim against, a beneficiary before actual payment to the beneficiary.
>
> XI: Rights Reserved: So long as both of us are alive, we acting together, reserve the right by an instrument in writing - other than

a will - to revoke or amend this deed and the trusts hereunder in part or in whole; however, notwithstanding this provision, **upon the death of either of us, this trust shall become irrevocable** and shall not thereafter be changed, amended or modified.

Dee and Joe amended the Trust several times thereafter.

In 2006, Dee was diagnosed with Stage 4 Lymphoma. As a result, Dee and Joe executed similar wills in 2007. In relevant part, Joe's will provided:

THIRD: all the rest, residue and remainder of my estate, real, personal and mixed, wherever situate, of which I shall die seized, possessed or be entitled to dispose of at the time of my death, together with any accumulated or undistributed income, I give, devise and bequeath to my wife, DORETTA J. MICHEL, provided she survives me as hereinafter provided.

FIFTH: in the event my wife, DORETTA J. MICHEL, shall fail to survive me as hereinafter provided, *I give the residue of my estate to the Trustee of the Revocable Living Trust* of Joseph J. Michel and Doretta J. Michel dated September 21, 1994, to be held and distributed under the terms of said agreement and all valid amendments thereto.

SIXTH: I hereby nominate, constitute and appoint my wife, Doretta J. Michel, as Executrix of this my Last Will and Testament and if she should die, refuse, or otherwise be unable to act as Executrix, I then nominate, constitute and appoint my son, Richard W. Michel, and my step-son, Steven B. Hay, or the survivor, as Co-Executors of this Will.

Similarly, Dee's will provided in relevant part:

FOURTH: all the rest, residue and remainder of my estate, real, personal and mixed, wherever situate, of which I shall die seized, possessed or be entitled to dispose of at the time of my death, together with any accumulated or undistributed income, I give, devise and bequeath to my husband, JOSEPH J. MICHEL, provided she (sic) survives me as hereinafter provided.

SIXTH: in the event my husband, JOSEPH J. MICHEL, shall fail to survive me as hereinafter provided, *I give the residue of my estate to the Trustee of the Revocable Living Trust* of Joseph

- 3 -

J. Michel and Doretta J. Michel dated September 21, 1994, to be held and distributed under the terms of said agreement and all valid amendments thereto.

SEVENTH: I hereby nominate constitute and appoint my husband, Joseph J. Michel, as Executor of this my Last Will and testament and if he should die, refuse, or otherwise be unable to act as Executor, I then nominate, constitute and appoint my son, Steven B. Hay, and my step-son, Richard W. Michel, or the survivor, as Co-Executors of this Will.

In 2009, Dee died. Joe initiated probate of Dee's will, and in accordance therewith, Joe inherited Dee's entire estate of assets worth over $2 million. Dee's sons did not receive any inheritance.

In July 2010, Joe executed a new will, leaving his entire estate, inclusive of the assets he inherited from Dee to his biological children and named Richard as the sole executor. In 2011, he executed a codicil giving specific bequests of $120,000 to each of his daughters.

Joe died on July 1, 2021. Richard initiated probate proceedings in accordance with Joe's will.

In July 2022, the Hays filed a complaint, which was amended three times, setting forth various causes of action including breach of contract not to revoke a will, unjust enrichment, breach of fiduciary duty, quiet title, and conversion. Generally, the Hays maintained that Dee and Joe went to great lengths to create a joint estate plan that would ensure all their children would benefit equally from their collective assets. However, after Dee died, they claimed that Joe deviated from that plan when he used Trust income for his benefit and that of his biological children to buy properties that were not added

to the Trust. The ultimate deviation from the plan occurred when Joe changed his will to give all his assets directly to his own children instead of giving them to the Trust as he and Dee originally planned in their 2007 wills.

The Michels filed preliminary objections claiming that the Hays failed to plead facts upon which relief could be granted. The trial court sustained the preliminary objections and dismissed the complaint.

The Hays filed this timely appeal. They and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, the Hays raise the following issues:

1. Did the [trial] court err as a matter of law when it determined that [the Hays] failed to show a contract not to revoke a will under [20 Pa.C.S.A. § 2701] where the Hays pled sufficient facts under the law to establish this breach of contract claim related to [Joe, Richard, Marilyn, and Darlene's] actions in revoking [Joe's] will?

2. Did the [trial] court err as a matter of law when it concluded that [Joe] and Richard [] did not commit a breach of their fiduciary duty as Trustees where [Joe] and Richard [] as trustees failed to reinvest trust income, and dwindled assets for their own financial gain at the expense of the beneficiaries including the Hays, Darlene [], and Marilyn []?

3. Did the [trial] court err as a matter of law when it dismissed [the Hays'] action to quiet title?

4. Did the [trial] court err as a matter of law when it dismissed the Hays' conversion claim where the Hays pled [Joe] and Richard [] failed to comply with the express terms of the Trust [] for their own financial gain?

5. Did the [trial] court err as a matter of law when it dismissed the Hays' claim for unjust enrichment where it was pleaded [Joe] and Richard [] were unjustly enriched at the expense of [the Hays]?

Hays' Brief at 4-5.

Preliminarily, we note that when we review an order that sustains preliminary objections, our "standard of review is *de novo*, and the scope of review is plenary." ***Mazur v. Trinity Area Sch. Dist.***, 961 A.2d 96, 101 (Pa. 2008). We therefore must determine

> whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Fiedler v. Spencer***, 231 A.3d 831, 835-36 (Pa. Super. 2020) (citations omitted). ***See Lundy v. Manchel***, 865 A.2d 850, 856 n. 8 (Pa. Super. 2004) ("In assessing the propriety of the trial court's decision to sustain preliminary objections, we examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven.") (citation omitted).

**Breach of Contract Not to Revoke a Will**

In their first issue, the Hays claim that the trial court erred in concluding that they failed to set forth sufficient facts to establish breach of a contract not to revoke a will under Section 2701 of the Probate, Estates, and Fiduciaries Code ("PEF Code").

Generally, a claim for breach of contract must be established by pleading: the existence of a contract, including its essential terms; a breach of a duty imposed by the contract; and resultant damages. *CoreStates Bank, N.A. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999). In particular, Section 2701 of the PEF Code provides:

> **(a) Establishment of contract.**—A contract to die intestate or to make or not to revoke a will or testamentary provision or an obligation dischargeable only at or after death can be established in support of a claim against the estate of a decedent only by:
>
> (1) provisions of a will of the decedent stating material provisions of the contract;
>
> (2) an express reference in a will of the decedent to a contract and extrinsic evidence proving the terms of the contract ["Prong 2"]; or
>
> (3) a writing signed by the decedent evidencing the contract ["Prong 3"].
>
> **(b) Joint will or mutual wills.--**The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

20 Pa.C.S.A. § 2701. Such a contract under the PEF Code involves giving up the power to revoke one's will, a matter of significant importance. A legal obligation to forbear revocation of a will cannot be imposed absent a clear and

definite contract established by proof of an express agreement or unequivocal circumstances. *Estate of Kester*, 383 A.2d 914, 918 (Pa. 1978); 9 Summ. Pa. Jur. 2d Probate, Estates, and Trusts § 1:144 (2d ed.). "When it is claimed that someone has contractually limited his testamentary freedom, our standard of proof is a demanding one." *Estate of Kester*, 383 A.2d at 918. The existence of a contract to revoke a will must be established by clear and convincing evidence. *Id*.

Specifically, the Hays claim that they set forth facts sufficient to establish that Dee and Joe contracted not to revoke their wills under Prong 2, or alternatively, Prong 3. Regarding Prong 2, the Hays argue they pled that there was an express reference to a contract, being the Trust, in the pourover provision of Dee and Joe's 2007 wills. As such, they maintain that the terms of the Trust were incorporated into Joe's 2007 will. According to the Hays, the Trust's terms, in pertinent part, provided: for distribution of a joint estate; any of Dee or Joe's remaining assets were to be distributed in accordance with the Trust; and the Trust became irrevocable upon the death of either Dee or Joe. Additionally, the Hays argue that they pled extensive extrinsic evidence explaining the circumstances surrounding the creation of Dee and Joe's estate plan which included an intent not to revoke their wills. Thus, the Hays contend that all these facts pled together were sufficient to set forth a claim under Prong 2. Hays' Brief at 19, 24.

As to Prong 3, the Hays argue that the Trust itself was a writing signed by Dee and Joe, evidencing a contract not to revoke a will. *Id.* at 29-30.

The trial court held that the Hays failed to establish a contract not to revoke a will under either Prong 2 or 3 under Section 2701. Trial Court Opinion, 1/22/24, at 14. We agree.

The language of the wills and Trust, which the Hays rely on to support their claim, is clear and unambiguous. It does not establish a contract not to revoke their wills. First, Dee and Joe's 2007 wills make no express reference to a contract not to revoke their wills. There is nothing expressly stated, or even suggested, that they intended to give up their right to revoke their wills. Significantly, they did not use any language to indicate that the testamentary disposition of one was being made in consideration of the testamentary disposition of the other to give up their right to revoke their will. Moreover, that Dee and Joe executed mutual wills was insufficient to establish a contract not to revoke a will. *See* 20 Pa.C.S.A. § 2701(b).

The pourover provision also did not set forth any language to indicate that Dee and Joe agreed not to revoke their wills. The language used here was very straightforward and typical for a pourover provision. As drafted, it did nothing more than direct that any remaining assets be added to the property of the Trust which already existed. Although the will referred to the Trust, there was no language that the terms of the Trust were incorporated into the 2007 wills. Instead, it merely provided for the transfer of any remaining assets to the Trust, the general purpose of a pourover provision; it did nothing more.

Furthermore, the Trust did not provide for a contract not to revoke a will. "The touchstone in construing a trust is the settlor's intent; the language of the trust deed itself is the best and controlling evidence of such intent." **In re Estate of Devine**, 910 A.2d 699, 703 (Pa. Super. 2006) (citation omitted). The Trust did not make any reference to the wills or indicate that any wills were not to be revoked. Although the Trust indicated it was irrevocable, there was nothing to indicate that Dee and Joe's wills could not be revoked. Additionally, the Trust did not provide that it should be incorporated into their wills.[1]

Thus, neither the 2007 wills nor the Trust evidenced any intention by Dee or Joe to establish a contract giving up each other's right to revoke their will. Further, these documents contained no language to indicate that Dee and Joe intended them to work together to form a contract not to revoke their wills. Thus, the Hays failed to plead facts to establish a contract not to revoke a will under either Prong 2 or 3 of Section 2701.[2] [3]

_____

[1] Obviously, as initially drafted, the Trust did not reference the 2007 wills given it was drafted years earlier. However, we observe that there was still no reference to the 2007 wills in the 2007 and 2009 amendments to the Trust nor any indication that Joe and Dee intended the Trust to be incorporated into their wills.

[2] Because the Hays failed to establish a contract, the first requirement under Prong 2, the extrinsic evidence which they pled is irrelevant as it cannot aid in interpreting any of the terms of the purported contract.

[3] The Hays also argue that the trial court erred in concluding that Joe's biological children could not be individually liable because they were not

*(Footnote Continued Next Page)*

**Breach of Fiduciary Duty**

In their second issue, the Hays claim that the trial court erred in concluding that they failed to set forth facts sufficient to establish a breach of fiduciary duty claim. Hays' Brief at 38. To establish a breach of fiduciary duty claim, a plaintiff must show:

> the existence of a fiduciary relationship between the plaintiff and the defendant, that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit, and that the plaintiff suffered an injury caused by the defendant's breach of its fiduciary duty.

*Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. 2020).

Specifically, the Hays argue they pled that a fiduciary duty existed between them, as beneficiaries of the Trust, and the Trustees, Joe and Richard. The Hays further argue that this duty was breached when Joe failed to reinvest net income into the Trust and invaded the corpus. According to the Hays, Joe purchased a one-half interest in 19 properties worth over $900,000 using Trust income, which he later transferred to Richard for a

_____

parties to the contract. The Hays maintain that, although the Michel children were not parties to the agreement, they perpetrated a fraud to induce Joe to breach his contract with Dee and, therefore, can be liable for breach of contract. Hays Brief at 31. However, as the trial court concluded, the Hays failed to state a claim against the Michels in their individual capacity because there was no agreement that the Michels could be parties to. Because there was no contract, the Michel children cannot be held liable for trying to breach it as the Hays alleged. Trial Court Opinion, 1/22/24, at 19.

nominal amount. *Id.* at 39. The Hays also maintain that Joe purchased another 3 properties using Trust income, which after Joe's death, Richard transferred to himself, paying only a nominal amount to Joe's estate. Thus, the Hays contend that Joe and Richard engaged in self-dealing by using Trust income for their own benefit, rather than purchasing properties to benefit the Trust and its beneficiaries, and, as a result, they were harmed. As such, the Hays maintain that these facts were sufficient to establish a claim for breach of fiduciary duty. *Id.* at 40.

The trial court concluded that the Hays failed to plead facts to establish a breach of fiduciary duty. Trial Court Opinion, 1/22/24, at 22, 24. We agree.

In reaching this decision, we conclude, as the trial court did, that the Trustees had no duty to reinvest net income into the Trust corpus. The language of the Trust document is clear and unambiguous. In relevant part, the Trust provided:

> "[u]pon the death of either one of us the survivor shall continue to receive the net income from this trust, but shall only ever have the right to withdraw, receive or have paid for their benefit up to one-half (1/2) of the principal of this trust during the survivor's lifetime. . . . "

Trust, Paragraph I.D. The Trust specifically provided that after Dee's death, Joe, as the surviving spouse, was to continue receiving net income from the Trust as had been provided for during the lifetime of Joe and Dee. This was, in part, governed by Paragraph I.A. of the Trust, which provided:

> A. ***As much, even if all, of the net income*** and principal
> as either of us may from time to time direct in writing

> shall be paid either to us or as either of us may specify .
> . . .

(emphasis added).  This provision enabled Dee and Joe to use the net income from the Trust, even all of it, as they may direct.  Notably, there was no limitation on how much of the net income could be used or for what it could be used.  In accordance, with Paragraph I.D., net income from the Trust could still be used in this same manner after Dee died.[4]

We acknowledge that the Trust required that any accumulated net income be reinvested in the Trust periodically.  The Trust provided:

> C. any remaining net income shall from time to time be accumulated and added to principal . . .

Trust, Paragraph I.C.  However, as is evident from the Trust's plain language, there was no criteria whatsoever to direct at what point in time, or at what level of accumulation, net income had to be added to the Trust's principal.[5]  Again, the clear language of the Trust permitted the surviving spouse to receive any amount of the Trust's net income and use it for any purpose.

Additionally, to the extent that Joe acquired any assets using Trust income, which he was permitted to do, nothing in the Trust prohibited him

---

[4] Notably, in addition to net income, the Trust provided that the surviving spouse could even withdraw half of the principal.  The Hays do not allege that Joe or the Michels breached this clause in the Trust.

[5] Furthermore, and critically, the Hays set forth no allegations sufficient to establish that there was an accumulation of net income which the Trustees should have reinvested but did not.

from transferring those assets as he wished prior to his death. Thus, Joe was not prohibited from transferring any properties he acquired to Richard prior to his death.

Furthermore, as discussed above, neither Dee nor Joe gave up their right to revoke their will; any of the assets Joe acquired using Trust income, which he was permitted to do without limitation, became part of his estate after his death and could be disposed of by the executor, being Richard, as the executor so determined.

In sum, there was no contract not to revoke a will. Given that Joe changed his will, giving everything to his own children, the assets Joe rightfully acquired using income from the Trust belonged to his Estate and not the Trust. The Hays failed to plead facts to establish a breach of fiduciary duty claim.

**Action to Quiet Title**

In their third issue, the Hays claim that the trial court erred in concluding that they failed to set forth facts sufficient to establish a quiet title claim. An action to quiet title may be brought "where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title, or interest in land." Pa.R.C.P. 1061(b)(2).

The Hays reassert the allegations they pled in their claim for breach of fiduciary duty. Regarding their action to quiet title, the Hays claim they have a right, title, and interest in the 19 properties Joe acquired using Trust income which were then conveyed to Richard. Because Joe and Richard improperly

obtained possession of these properties, the Hays maintain that they have a viable action to quiet title. Hays' Brief at 41-42.

The trial court concluded that the Hays failed to plead facts establishing a right, title, or interest in the 19 properties, and therefore failed to state a claim to quiet title. Trial Court Opinion, 1/22/24, at 25. We agree.

As discussed above, Joe was permitted to use the income from the Trust however he chose, without limitation, and had no obligation to reinvest it in the Trust. Thus, the properties referenced by the Hays in their action to quiet title were rightfully acquired by Joe and titled in his name. Further, as resolved hereinabove, Joe did not breach a contract to revoke his will, and based upon his new will, he was not obligated to convey his remaining assets to the Trust. Joe therefore could do what he wished with these properties during his life and after his death. Consequently, the Hays had no right, title or interest in those properties as they were not assets of the Trust.

Thus, the Hays failed to plead facts to establish a claim for quiet title.

**Unjust Enrichment**

In their fourth issue, the Hays claim that the trial court erred in concluding that they failed to set forth facts sufficient to establish a claim for unjust enrichment.

> Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, for which the beneficiary must make restitution. Black's Law Dictionary (8th ed. 2004). An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law. ***Schott v. Westinghouse Electric Corp.***, 259 A.2d 443, 448 (1969).

- 15 -

*American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 531 n.7 (Pa. 2010). "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Artisan Builders, Inc. v. Jang*, 271 A.3d 889, 893 (Pa. Super. 2022) (citation omitted). We have further defined unjust enrichment as the defendant either "wrongfully secured or passively received a benefit that [ ] would be unconscionable for [him] to retain." *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. 2017) (citation omitted).

Here, the Hays similarly argue that they are entitled to compensation for unjust enrichment because Joe and Richard improperly acquired properties and income using Trust assets. Because the Hays believe Joe and Richard received Trust assets, which were established for the Hays' benefit, the Hays maintain that Joe and Richard received a benefit to which they were not entitled and which they cannot retain without compensating the Hays. Hays' Brief at 38.

The trial court held that the Hays failed to plead facts to establish a claim for unjust enrichment because they did not allege that *they* conferred a benefit on the Michels. Instead, they alleged in their amended complaint that Dee conferred a benefit on Joe when she bequeathed her entire estate to him. Thus, the Hays did not satisfy the requirement that they confer a benefit

on the Michels to make out a claim for unjust enrichment.[6] Trial Court Opinion, 1/22/24, at 26-27. We agree.

As the trial court explained, the Hays alleged the following:

[The Hays] do not allege that [they] have conferred a benefit on the [Michels], but rather that '[w]hen [Dee] died, [Joe] received the entirety of [Dee's] estate pursuant to her 2007 Will and the Joint Estate Plan,' and that '[Joe] appreciated and understood the benefits that were conferred on him, and the bargained for exchange to which he agreed in order to receive those benefits,' that '[Joe] understood [their] intention when entering the Joint Estate Plan, and when he agreed with [Dee] that both of their 2007 Wills would become irrevocable upon the death of the first of them,' and that he 'retained such benefits to the detriment of [Dee] and [the Hays], as third party beneficiaries to the Joint Estate Plan.' Third Amended Complaint, paragraphs 164-168.

In light of [the Hays'] clear allegation cited above that [Dee], not the [Hays], conferred a benefit upon [the Michels], [they] cannot satisfy the first element of their claim for [u]njust [e]nrichment.

*Id.* Notably, the allegations in the amended complaint differ from the argument the Hays make now, *i.e.*, that the Hays, not Dee, conferred a benefit on the Michels. In any event, as previously stated, the Michels did not improperly receive Trust assets or income.

Thus, the Hays failed to plead facts to establish a claim for unjust enrichment.

---

[6] The court also concluded that the Hays' claim failed because it was based on the purported contract between Dee and Joe not to revoke their wills. Under such circumstances, the quais-contractual doctrine of unjust enrichment does not apply.

## Conversion

In their fifth and final issue, the Hays claim that the trial court erred in concluding that they failed to set forth facts sufficient to establish a claim for conversion. Conversion is defined as the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. When such an act occurs, the plaintiff may bring suit if he had an immediate right to possession of the chattel at the time it was converted. ***Bank of Landisburg v. Burruss***, 524 A.2d 896 (Pa. Super. 1987).

The Hays reassert the allegations they pled in relation to their breach of fiduciary duty claim. Additionally, regarding their conversion claim, the Hays maintain they alleged that: they had a right to future income from the Trust; Joe and Richard exercised control over the Trust assets; and Joe and Richard diverted funds from the Trust thereby depriving the Hays of a future right to money without their consent or lawful justification. Hays' Brief at 43-44.

The trial court concluded that the Hays failed to set forth facts to establish a claim for conversion. Trial Court Opinion, 1/22/24, at 28-29. We agree.

Again, the Hays' claim for conversion was premised on a purported duty by the Trustees to reinvest the net income into the Trust. As discussed in detail above, no such duty existed. Joe was lawfully justified in using Trust income how he chose. As such, the Hays had no right to the Trust's income and were not deprived of any money from the Trust.

- 18 -

Thus, the Hays failed to plead facts to establish a conversion claim.

For the foregoing reasons, we conclude that the trial court did not err in sustaining the Michels' preliminary objections in the nature of a demurrer and dismissing the Hays' third amended complaint.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2024